(January 16, 1968)

■ JOSEPH MARTINKOVIC, JR., as Guardian ad Litem and Administrator of the Estate of MICHAEL MARTINKOVIC, Deceased, an Infant, et al., Respondents, v. CHRYSLER LEASING CORPORATION, Appellant.— Order, entered June 26, 1967, granting to plaintiffs in a personal injury action a trial preference pursuant to CPLR 3403, reversed, on the law and on the facts, and in the exercise of discretion, without costs and disbursements, and motion by plaintiffs for trial preference denied, without costs. The family has adequate income to take care of reasonable current living expenses and it does not satisfactorily appear that the lack of funds has or will deprive the injured wife from receiving proper medical care and attention. Under all the circumstances as disclosed in the record, the trial preference may not be granted on the theory of " constructive indigency " alleged to exist because of inability to pay in full the medical and hospital expenses incurred and to be incurred in the treatment, care and rehabilitation of the injured. (Cf. *Johnson* v. *Pennsylvania Greyhound Lines*, 282 App. Div. 709.) In *Goldin* v. *Malone Dairy Co.* (209 App. Div. 341, 342), this court declared: " It is imperative now to declare our purpose to be most sparing in the affirmance of any grant of preference of tort causes on the ground of alleged destitution or asserted lack of financial resource. The impossibility of accomplishing relative justice in these matters in so far as calendar position is concerned, constrains this court to rigidly enforce the doctrine that causes should be tried only in their regular order, except when most extraordinary circumstances appear in the moving papers as ground for preference." Present day calendar conditions render it " imperative " that we rigidly adhere to the policy so declared. Concur — Eager, J. P., Steuer, Tilzer and McGivern, JJ.; Capozzoli, J., dissents in the following memorandum: On May 7, 1966, plaintiff, Barbara Martinkovic, was a passenger in a vehicle which was involved in a head-on collision with another automobile. The other automobile crossed over the center dividing line to the wrong side of the road. As a result, the drivers of both vehicles were killed, the six-month-old son of plaintiff and her sister-in-law were also killed. Plaintiff was the only survivor, although she sustained very severe and crippling injuries. To list all of her injuries in detail would be to give a brief lecture in human anatomy as the injuries cover nearly every part of her body, from her head to limbs. However, it is necessary to cite some of the injuries in order to demonstrate the terrible condition this plaintiff is in. Her face was literally torn, she lost the vision of her right eye and she is awaiting the insertion of an artificial eye; severe maxillo facial injuries, with residual osteomyelitis; fractures of nasal bones; compound comminuted fracture of the anterior left mandible; compound comminuted oblique fracture through mid-shaft of the right tibia, with anterior bowing at fracture site, with marked displacement and overriding; comminuted fracture of the right femur, at the mid and distal third, with severe overriding and displacement. Her facial lacerations have required literally dozens of

surgical procedures in an effort to reduce the scarring over the face, head, neck and throat, and further plastic surgery is to be performed. There are many more injuries which could be listed, but the above-mentioned should be sufficient to demonstrate what else is in store for this plaintiff. Thus far there have been hospital, medical and surgical bills in the amount of $31,324.43, of which Blue Cross and Blue Shield have paid approximately the sum of $6,000, leaving an outstanding balance of $25,000. In addition, it is estimated that the future cost of opthalmology, plastic surgery and oral surgery will be between $12,000 to $15,000. She has thus far been confined to hospitals for 4½ months, with more to go. These facts are not in dispute. In addition it is asserted by the plaintiff that she is in debt, has no savings or other assets which can be drawn upon and that she is dependent wholly and solely upon her husband's take-home pay, which is $468 per month. Because of her physical condition, the family's living expenses exceed the income of the husband. Recognizing the plight of the plaintiff, the appellant earnestly represents that it is willing to advance the payment of all medical, surgical and hospital expenses now due and which are to become due in the future, and also contribute from $30 to $40 per month toward her living expenses. There was some general discussion in the court below, between the parties, along these lines, but nothing definite was ever worked out. However, in the appellant's brief on this appeal, it is quite clear that it is willing to go through with its offer which has been herein mentioned. The appellant argues that, because of its willingness to make the contributions mentioned, the order granting the preference should be reversed. I know of no case in this Department that has based its denial of a preference, which might otherwise be proper, on the willingness of a defendant to contribute towards a plaintiff's medical and living expenses, and whether this should be law raises important policy questions which the memorandum of the majority does not discuss. Therefore, the only question to be decided on this appeal is whether the financial condition of the plaintiff, in the light of expenditures which have been and are to be made in the future for necessary medical and surgical attendance, is such as to justify the action of the court below. While I am mindful of the fact "that causes should be tried only in their regular order, except when most extraordinary circumstances appear in the moving papers", surely, on the state of the record, it was within the lower court's discretion to grant the preference and, in the absence of an abuse of that discretion, its order should stand. For the reasons above stated I dissent and vote to affirm.